**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAQUAN BANKS,<br><br>      Plaintiff,<br><br>v.<br><br>THOMAS J. DART, ET AL.,<br><br>      Defendants. | No. 21-CV-06611<br><br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jaquan Banks (Banks), an individual in custody of the Illinois Department of Corrections (IDOC) brings this action under 42 U.S.C. § 1983 against Defendants Thomas J. Dart-Sheriff of Cook County, Illinois (Dart), the County of Cook (Cook County), Allison M. Haungs M.D., Patrick K. Ennis M.D., Rubina S. Zahedi M.D., Andrew Q. DeFuniak M.D., Chad J. Zawitz, M.D. (Cook County Doctors) (collectively, Cook County Defendants), Rob Jeffreys-Acting Director of the Illinois Department of Corrections (Jeffreys), David Gomez-Warden of Stateville Correctional Center (Gomez), Wexford Health Sources, Inc. (Wexford), Kul B. Sood, M.D., Claude Owikoti PA, and Shiny Mathew Nanthikattu APN aka Shainy Mathew Nanthikattu APN (Wexford Medical Staff) (collectively Wexford Defendants), alleging that jail and prison personnel were deliberately indifferent to his medical needs as a pretrial detainee at Cook County Jail, and later as an inmate at Stateville Correctional Center. Banks brings constitutional claims under the Fourteenth and Eighth Amendments (Counts I and II), a *Monell* claim against Wexford (Count III), and state

law claims for intentional infliction of emotional distress (Counts IV and V) and negligence (Counts VI and VII). R.[1] 33, First Amended Complaint (FAC).

Before the Court are several motions to dismiss. Jeffreys and Gomez bring a motion to dismiss the claims asserted against them—deliberate indifference under the Eighth Amendment (Count II) and intentional infliction of emotional distress (Count V)—for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 64, Jeffreys and Gomez Mot. Dismiss. The Cook County Defendants seek dismissal of the Amended Complaint due to Banks' failure to disclose a previous lawsuit in his original, *pro se* Complaint. Alternatively, the Cook County Defendants seek dismissal of the claims against Dart—deliberate indifference under the Fourteenth Amendment (Count I) and intentional infliction of emotional distress (Count IV) for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and based on immunity grounds. The Cook County Defendants also seek dismissal of all claims brought by Banks as barred by the statute of limitations, and dismissal of the negligence (Count V) claim pled against Cook County and the Cook County Doctors pursuant to the Tort Immunity Act (the Act). R. 66, Cook County Defs.' Mot. Dismiss. The Wexford Defendants move to dismiss the *Monell* liability claim against Wexford (Count III) and the intentional infliction of emotional distress claim against the Wexford Medical Staff (Count V) for

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

failure to state a claim under Rule 12(b)(6). R. 93, Wexford Defs.' Mot. Dismiss; R. 102, Nanthikattu's Mot. Dismiss.[2]

For the reasons that follow, Jeffreys and Gomez's motion is granted with prejudice. The Cook County Defendants' motion is granted in part and denied in part. The claims against Dart are dismissed with prejudice, but the remainder of the Cook County Defendants motion is denied. The Wexford Defendants' motions to dismiss are denied.

## Background[3]

Banks was booked into the Cook County jail in the custody of the Cook County Department of Corrections (CCDOC) on May 16, 2020. FAC ¶ 1. While at CCDOC, Banks informed CCDOC medical staff who provided him medical care, that he was experiencing severe abdominal pain and discomfort. *Id.* ¶ 47. On May 16, 2020, Dr Huangs conducted an Intake screening medical examination of Banks. *Id.* ¶ 48. During the examination, Banks informed Dr. Huangs that he was having trouble eating due to a sharp and stabbing stomach pain. *Id.* On that date, Dr. Huangs diagnosed Banks with "L-sided abdominal pain and prescribed Tylenol and a lidocaine patch." *Id.* ¶ 49.

---

[2]Nanthikattu filed a separate, later-filed motion to dismiss making substantially similar arguments to the arguments made by the other Wexford Medical Staff in their earlier-filed motion to dismiss. However, Banks responded to both Wexford motions to dismiss in a combined response (R. 109, Pl.'s Resp. Wexford) and the Wexford Defendants filed a combined reply (R. 110, Wexford Reply).

[3]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Banks. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Approximately two weeks later, Dr. Ennis examined Banks and during the exam, Banks informed him that he was having intermittent, but sharp abdominal pain. FAC ¶ 50. Dr. Ennis diagnosed Banks with right lower quadrant abdominal pain and ordered an ultrasound of the right lower quadrant of Bank's abdomen, as soon as possible. *Id.* ¶ 51.

On June 13, 2020, while still at CCDOC, Bank's submitted a written form to Cermak Health stating "I've been having real bad pain in the right lower side of my stomach I can't hold my food as well is cause me pain in the middle of the night. Its [sic] to the point my chest and ribs start to hurt sometimes I've been taking my meds an still nothing has happened. FAC ¶ 52.

On information and belief, on or about June 18, 2020, Banks sent a letter to Dart explaining that he was suffering serious pain in his lower abdomen, that he was in excruciating pain, throwing up when he ate, and was being denied medical treatment. FAC ¶ 53.

On or about June 22, 2020, Dr. Zahedi conducted a CT scan of Bank's abdomen. FAC ¶ 54. One of Dr. Zahedi's findings was a "6 mm appendicolith within the distal appendix." *Id.* Two days later, Dr. DeFuniak conducted a medical examination of Banks, and diagnosed him with right lower quadrant pain. *Id.* ¶ 55–56. During that examination, Banks reported to Dr. DeFuniak that the pain persists and sometimes wakes him up at night. *Id.* ¶ 55. On information and belief, Dr. DeFuniak had Dr. Zahedi's finding regarding the "6 mm appendicolith" during the examination. *Id.* ¶ 57.

On information and belief, the medical record for Bank's June 24, 2020 medical examination with Dr. DeFuniak indicates: "General Surgery Clinic Referral (Order)…Stronger, Chronic Appendicitis, Schedule Indicator, Cermak Patient." FAC ¶ 58.

Next, on June 28, 2020, Banks submitted another written form to Cermak Health stating: "I've been having problems with my stomach that's still been bothering me. I still have pain in my stomach that hurt really bad at night." FAC ¶ 59. Again, on July 1, 2020, Banks submitted a subsequent written form to Cermak Health again stating: "I been having bad pain in my stumach [sic] ate [sic] night it gets worser [sic] I was Tynol [sic] & 40 MG Famotidine but I stopped gettin it. I recently got an Catscen [sic] done and was told I had a stone or sume [sic] sort in my appendix this problem is cauing [sic] me real pain in my chest an [sic] rib area." *Id.* ¶ 60.

On July 7, 2020, Banks submitted another written form to Cermak Health indicating "My stomach has been causing me sharp pain in the lower area I cant hold any food and I bearly [sic] slip [sic] at night. The medicine I take isn't doing anything anymore. It's to the point my chest hurt sometime." FAC ¶ 61.

On information and belief, on or about July 13, 2020, Banks sent another letter to Dart stating he was suffering from a serious medical condition, needed surgery, and was being denied medical treatment. FAC ¶ 62.

On or about August 7, 2020, Banks was transferred to custody at NRC/Stateville (Stateville). FAC ¶ 61. While in custody at Stateville from August 7,

2020 to October 16, 2020, Banks informed the medical staff, including Dr. Sood, PA Owikoti, and APN Nanthikattu, that he had experienced severe abdominal pain while at CCDOC and that he was still having that pain. *Id.* ¶ 64. This included a medical examination on August 7, 2020 by Dr. Sood, a medical examination by PA Owikoti on August 27, 2020, a medical examination by APN Nanthikattu on September 11, 2020, and another medical examination on September 14, 2020 by Dr. Sood. *Id.* Specifically, telling the Wexford medical staff that he "had experienced severe abdominal pain I the CCDOC in the area described as the right lower quadrant of [Banks'] abdomen; that [Banks] was still experiencing severe abdominal pain and discomfort in the area described as the right lower quadrant of [Banks'] abdomen; and that [Banks] has a serious medical problem with his appendix." *Id.* Banks alleges that the Wexford Medical Staff knew of the "6 mm appendicolith within the distal appendix" because his medical record for examination on September 11, 2020 contains handwriting appearing to state "CT—abdome: 6 mm appendicolith…within the distal appendix[.]" *Id.* ¶ 65.

On information and belief, on or about August 28, 2020, Banks sent a letter to Wexford Health informing it of his serious medical condition and that he was being denied medical treatment. FAC ¶ 66.

On information and belief, on September 2, 2020, Banks sent Gomez, the Warden at Stateville, a letter informing him that he was experiencing excruciating pain and that he had been denied medical treatment at Stateville. FAC ¶ 67. Approximately a few weeks later, on information and belief, on or about September

6

15, 2020, Banks sent Jeffreys, the acting IDOC Director, a letter informing him that he was in much pain and was being denied medical treatment at Stateville. *Id.* ¶ 68.

About one month later, Banks was transferred from Stateville back to the CCDOC. FAC ¶ 69. Four days later, Banks was taken by ambulance to Stroger hospital, where he underwent an emergency appendectomy and his appendix was removed. *Id.* ¶ 71. The surgery ended the chronic abdominal pain that Banks had been experiencing since May 16, 2020. *Id.* ¶ 71.

Banks originally filed this action *pro se* on December 10, 2021. R. 1, Compl. The prior District Court Judge assigned to this case screened Banks' Complaint under 28 U.S.C. § 1915(A), and dismissed his Complaint with leave to amend. *Id.* Banks was appointed counsel by the Court on May 4, 2022. On October 17, 2022, counsel sought leave to file a First Amended Complaint, which was granted by the Court on October 18, 2022. R. 30, Mot. for Leave; R. 32, Minute Entry. Banks, through counsel, filed his First Amended Complaint on October 24, 2022.

Of relevance here, the prior District Court Judge that screened and dismissed Bank's original, *pro se* Complaint had identified in his Order certain deficiencies in the Complaint. 5/4/2022 Order. Those deficiencies included that "[w]ith respect to the supervisory Defendants, Plaintiff's allegations as currently pleaded are too thin to state a claim." 5/4/2022 Order at 6. Further, that Order specified that "Plaintiff's bare allegation that he wrote unanswered letters are insufficient" to establishing deliberate indifference" as to the supervisory personnel. *Id.* at 6–7.

7

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.   Gomez and Jeffreys' Motion

#### A.      Deliberate Indifference (Count II)

Banks alleges in Count II that Defendants Gomez and Jeffreys were deliberately indifferent to his rights under the Eighth Amendment by depriving him of medical treatment for his appendix.[4] Because Banks was a prisoner while at

---

[4]As-pled, the deliberate indifference claims against Defendants Jeffreys, Gomez, and Dart (Counts I and II) are fashioned as personal liability claims under 42 U.S.C. § 1983, and not *Monell* claims against the Defendants in their official capacities. *See Mohammed v. WestCare*

Stateville, his claim of deliberate indifference is governed by the Eighth Amendment. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (cleaned up)[5] ("The amendment imposes upon prison officials the duty to provide humane conditions of confinement.")

Section 1983 provides that a person may not be deprived of any constitutional rights by an individual acting under color of law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). *See* 42 U.S.C. § 1983. Liability under Section 1983 depends on personal involvement in the alleged constitutional violation. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). That is, there is no vicarious liability in Section 1983 actions, so defendants are responsible for their own misdeeds but not anyone else's. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In other words, "[s]itting atop the chain of command is not enough to rope an official within the circle of liability." *Thomas v. Dart*, 2023 WL 3123151, at * 5 (N.D. Ill. April 27, 2023). "The Eighth amendment prohibits deliberate indifference to prisoners' serious medical needs because it constitutes an unnecessary and wanton infliction of pain." *Walker v. Wexford*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state an Eighth Amendment deliberate indifference to serious medical needs, a plaintiff must allege that: (1) he suffered from an objectively serious medical condition; and (2) the individual defendant was deliberately, that is subjectively indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019)

---

*Found., Inc.*, 2018 WL 2388407, at *3 (N.D. Ill. May 25, 2018). As such, the Court analyzes those claims under 42 U.S.C. § 1983 for personal liability of these Defendants only.
[5] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*cert denied*, 140 S. Ct. 50 (2019). For an official's actions to reach the level of deliberate indifference, he or she must "know of and disregard an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "The standard is a subjective one: the defendant must know facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw that inference." *Zoya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

Jeffreys and Gomez do not dispute that Banks has adequately alleged that he suffered from a serious medical condition. Instead, they focus their arguments on the second prong: that Banks fails to allege sufficient facts establishing a deliberate indifference claim. Gomez and Jeffreys contend that Banks does not allege that either of them knew of and disregarded an excessive risk to his health. R. 65, Jeffreys and Gomez's Memo Dismiss at 4. Instead, they point out, he merely alleges that he sent each Defendant a letter notifying them of his serious medical condition. *Id*. These allegations, insist Jeffreys and Gomez, are not sufficient to show that either of them acted with a sufficiently capable state of mind. *Id*. at 4–5.

As an initial matter, Jeffreys and Gomez's suggestion, that an inmate's correspondence to a prison administrator is insufficient to establish a basis for that administrator's personal liability, is wrong as a matter of law. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). "[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions" to give rise to a duty to act. *Vance*, 97 F.3d at 993. The communication, however, must give the official "sufficient notice to alert

him or her to a risk to inmate health or safety. *Perez*, 792 F.3d at 782. "In other words, prisoner requests for relief that fall on deaf ears may evidence deliberate indifference." *Id*.

Here, Banks alleges that he was transferred to Stateville on August 27, 2020. FAC ¶ 61. Approximately three weeks later, he wrote a letter to Defendant Gomez, the Warden at Stateville informing him that he has a serious medical condition and is constantly being denied medical treatment for his medical need. *Id.* ¶ 61, Exh. C. Banks further writes that he has spoken to the nurses about a stone in his lower abdomen that needs to be removed and that he is in excruciating pain. *Id*. Banks asks Gomez if he can help him get medical treatment for his condition. *Id*.

Viewing the facts and all reasonable inferences in the most favorable light to Banks, the Court finds that Banks does not plausibly allege a deliberate indifference claim against Defendant Gomez. As the Seventh Circuit has explained, prison officials are entitled to defer to the reasonable judgment of the medical staff. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (warden and grievance officer entitled to relegate to the prison medical staff the provisions of good medical care). Moreover, Banks does not allege that he sent anything other than the one letter to Gomez regarding the medical staff at Stateville's failure to address his serious medical need. "The Seventh Circuit has made clear that when a prison official continuously ignores or denies numerous detailed letters and grievances regarding a constitutional deprivation, such that it rises to the level of 'turning a blind', he may become personally liable for that deprivation." *Riley El v. Gomez*, 2023 WL 3169512, at * 10

11

(N.D. Ill. April 28, 2023) (citing *Gentry*, 65 F.3d at 561)). That is not the case here. This is not meant in any way, to give short shrift to Banks' situation. He was in pain and was trying to call attention to his plight, which he understandably felt, was being ignored. But to hold Gomez liable, more is needed. In short, he must, but has not provided allegations that show that Gomez knew about a substantial risk of harm and refused to act to prevent the harm. *See Farmer*, 511 U.S. at 837. Therefore, Defendant Gomez's motion to dismiss is granted.

Turning to Jeffreys, Banks wrote to IDOC Director Jeffreys on September 15, 2020. FAC ¶ 68, Exh. D. In his letter, Banks informs Jeffreys that he is writing because he has filed grievances regarding his medical needs being denied at Stateville and has not received a response. *Id*. He further wrote that while he has a serious medical condition that requires surgery, he is being denied medical treatment. *Id*. He also informs Jeffreys that he has written to both Wexford Health and the warden of Stateville about the repeated denials of medical treatment. *Id*. He adds that he us much pain and asks Jeffreys for help in getting medical attention. *Id*. Banks was transferred from Stateville about a month later. *Id*. ¶ 61 Viewing the facts and all reasonable inferences in the most favorable light to Banks, the Court finds that Banks does not plausibly allege a deliberate indifference claim against Jeffreys. These allegations are too bare to support as deliberate indifference claim against Jeffreys. As with Gomez, Jeffreys has the right to rely upon the reasonable judgment of Stateville's medical staff. Moreover, as with Gomez, Banks sent Jeffreys one letter detailing his situation. And Banks was transferred out of Stateville within a month

of sending the letter to Jeffreys. All in all, the Court finds that Banks fails to plausibly show that Jeffreys was deliberately indifferent to his serious medical condition. Accordingly, Jeffreys' motion to dismiss is granted.

The Court now turns to Jeffreys and Gomez's motion to dismiss Banks' intentional infliction of emotional distress claim.

## B. Intentional Infliction of Emotional Distress (Count V)

In Count V, Banks asserts a claim of intentional infliction of emotional distress (IIED) . Banks alleges that the Jeffreys and Gomez's conduct in deliberately delaying medical treatment to Banks, including surgical treatment, was extreme and outrageous. FAC ¶112.

To plead an IIED claim, Banks must allege: (1) extreme and outrageous conduct; (2) Defendants' intent that the conduct inflict severe emotional distress, or knowledge that there is a high probability that the conduct will cause severe emotional distress; and (3) the conduct in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). Extreme and outrageous conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Cairel*, 821 F.3d at 835 (cleaned up).

Here, for the reasons discussed above in Section I(A), the Court finds that Banks fails to plausibly plead a claim for IIED against either Jeffreys or Gomez.

13

## II. The Cook County Defendants' Motion

### A. Dismissal for Failure To Disclose Previous Lawsuit

The Cook County Defendants argue that in his original Complaint, filed *pro se* and using the standard form supplied by the Court, Banks failed to disclose a prior lawsuit he had filed, in violation of the Northern District of Illinois' form's requirements. Cook County Defs.' Memo. Dismiss at 4. The Cook County Defendants further highlight that, pursuant to the form, Banks was required to provide a listing of all lawsuits filed in any state or federal court, and to certify the truthfulness of his Complaint, including the lawsuit disclosure. *Id.* at 4–5. The Cook County Defendants note that a search of court records revealed a lawsuit filed by Banks in the Northern District of Illinois, Case No. 16-cv-06739, *Banks v. People of the State of Illinois*, which was not included in Banks' original Complaint. *Id.* at 5. Accordingly, the Cook County Defendants ask the Court in its discretion to dismiss this case with prejudice as a sanction, or, alternatively, to revoke Banks *in forma pauperis* status pursuant to Northern District of Illinois Local Rule 81.1 and § 1915(g). *Id.*

In Response, Banks admits that he failed to list his Application for Writ of Mandamus, Case No. 16-cv-6739, in his original pleading, which had sought relief based on alleged errors in a criminal case that Banks was ultimately imprisoned for at Dixon Correctional Center. R. 81, Pl.'s Resp. Cook County Defs.' Mot. Dismiss at 3. Banks further specifies that in the other previously filed case, Banks had listed another case entitled *Jacquan Banks, petitioner v. Anita Alvarez, etc., et al.*, respondents, Docket No. M13722, which was field in the Supreme Court of Illinois.

*Id.* Banks explains the omission as "inadvertent and was not an attempt by Plaintiff to intentionally mislead the court in pursuit of some illicit benefit," and cites to Rule 83(a)(2) of the Federal Rules of Civil Procedure to support that any local rule may not be enforced "in a way that causes a party to lose any right because of a nonwillful failure to comply." *Id.* (citing *Wilson v. Wexford Med. Servs.*, 751 Fed. App'x 956, 957-58 (7th Cir. 2019).

The Court finds, in its discretion, that although Banks failed to provide his full litigation history when he originally brought this action as a *pro se* plaintiff, as required, as explained in his Response, that omission was inadvertent and not intentional. Dismissal based on a finding of fraud due to the omission of litigation history may be appropriate in certain circumstances. *See, e.g., Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (affirming lower court's finding that omission of litigation history was fraudulent where same plaintiff had recently filed three other pending cases, was actively litigating them, and therefore the omissions were not "accidental[.]"); *Taylor v. Officer Baker, et al.*, Case No. 13-cv-1931 (N.D. Ill. Mar. 26, 2013), R. 6 (dismissing complaint for failure to disclose prior litigation history where plaintiff failed to include any of the "at least ten prior federal lawsuits he filed. The plaintiff cannot reasonably claim a lack of memory, as six of those cases settled just days before he initiated this action.") However, here, in contrast, the two cases Banks' failed to disclose were much older, closed cases, and not current cases before the Court. Further, Banks' omission is not material, as there is no evidence that Banks has any strikes against him which would impact his ability to file this lawsuit. The

15

Court accepts Banks' explanation that the omission was inadvertent, and denies the Cook County Defendants' request to sanction Banks by dismissing this lawsuit with prejudice, or removing his *in forma pauperis* status, on this basis.

## B. Deliberate Indifference as to Dart (Count I)

Because Banks was a pretrial detainee at the time of the events in question involving his custody at CCDOC, the claims against the Cook County Defendants, including Dart, arise under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F. 3d 335, 350 (7th Cir. 2018); *see also Hardeman v. Curran*, 933 F. 3d 816, 823 (7th Cir. 2019). A claim for constitutionally inadequate medical care under the Fourteenth Amendment requires a pretrial detainee to allege that he suffered from a serious medical need and that defendants (1) "acted purposefully, knowingly, or perhaps even recklessly when considering the consequences of [their] conduct in regard to this medical need," and (2) defendants' conduct was objectively unreasonable. *Miranda*, 900 F. 3d at 353–54. Negligence is insufficient to state a claim under this standard. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Here, Banks alleges that he was a pretrial detainee at CCDOC from May 16, 2020 to August 7, 2020, and during that time he "informed physicians, nurses and other medical staff, who provided medical care to Plaintiff that Plaintiff [was] experiencing severe abdominal pain and discomfort." FAC ¶ 47. Banks goes on to describe different visits with medical staff at CCDOC throughout this period. *Id.* ¶¶ 48–51. As to Dart, Banks alleges that he sent a letter to Dart on or about June 18,

2020, describing that he was "suffering serious pain in his lower abdomen; . . . was in excruciating pain; . . . was throwing up when he ate; and that Plaintiff was being denied medical treatment at CCDOC." *Id.* ¶ 53; Exh. A. Banks goes on to describe additional medical visits and examinations with CCDOC staff. FAC ¶¶ 54–57. Banks wrote another letter to Dart on or about July 13, 2020, explaining that he has a serious medical condition, needed surgery, and was being denied medical treatment at CCDOC. *Id.* ¶ 62; Exh. B. In the second letter, Banks writes that "I wrote you a letter almost a month ago about my serious medical condition." *Id.* In the Amended Complaint, Banks does not elaborate upon his allegation he sent two unanswered letters to Dart, approximately one month apart, while he was a pretrial detainee for a period of approximately three months.

Dart contends that Banks' Amended Complaint fares no better than his original pleading with respect to including sufficient allegations as to Dart's knowledge of Banks' medical condition. R. 67, Cook County Defs.' Memo. Dismiss at 7–8. Specifically, argues Dart, Banks has failed to include "any new facts sufficient to suggest that Defendant Sheriff Dart had actual knowledge of Plaintiff's medical condition or of the health risk it would pose to Plaintiff." *Id.* at 7. The single allegations concerning Dart's knowledge (FAC ¶¶ 53, 62)—that Banks sent him two unanswered letters—is insufficient. *Id.*

Banks responds that the new allegations contained in Paragraphs 47 through 63 of the Amended Complaint regarding his medical history while he was a pretrial detainee "give a different context to the content of Plaintiff's desperate letters to

17

Sheriff Dart than was available to the Court when it made its 1915A review." Pl.'s Resp. Cook County Defs.' Memo. Dismiss at 8. Banks posits that this is a situation where Dart should have had reason to believe, or actual knowledge, that his medical staff were "mistreating or not treating Plaintiff," citing *Vance*, 97 F. 3d at 993 for general propositions of law on the deliberate indifference standard. The new allegations about his medical history, considered with the allegations of sending Dart letters, along with his request for relief in Paragraph 78 and 88, argues Banks, are sufficient to plausibly allege that Banks did provide notice to Dart of the excessive risk to his health from a serious medical condition, and that he has stated a plausible claim against him. Pl.'s Resp. Cook County Defs.' Memo. Dismiss at 9–10.

Viewing the facts and all reasonable inferences in the most favorable light to Banks, the Court finds that Banks does not plausibly allege a deliberate indifference claim against Dart. Again, like Jeffreys and Gomez, Dart—as a prison official—is entitled to defer to the reasonable judgment of the medical staff. *See Burks*, 555 F.3d at 594. Further, although Banks has included additional allegations about his medical history and treatment vis-à-vis other defendants, Banks has not included any allegations specific to Dart's knowledge of the serious medical condition. Again, Banks only alleges that he sent two unanswered letters to Dart regarding his medical condition and treatment (not that Dart was aware of his medical history and treatment, for example) and the allegations remain too thin to state any claim, and do not cure the previously identified deficiency that Banks has not included allegations to support that Dart was personally involved in any alleged constitutional

18

deprivation. *See* 5/4/2022 Order at 6. Here, the Court finds this is insufficient to pleading allegations that would support Dart was "turning a blind eye," as two letters does not rise to the level of ignoring numerous detailed letters such that personal liability can lie against Dart. *See Riley El*, 2023 WL 3169512, at *10. Again, Banks was clearly in pain and trying to call attention to his situation, but to hold Dart liable more is needed, and Banks has failed to include allegations showing Dart knew about a substantial risk of harm, or that Dart's conduct was objectively unreasonable. Thus, Banks has failed to state a claim against Dart for deliberate indifference.

## C. Intentional Infliction of Emotional Distress as to Dart (Count IV)

In Count IV, Banks asserts a claim of intentional infliction of emotional distress (IIED) against Dart. Banks alleges that Dart's conduct in deliberately delaying medical treatment to Banks, including surgical treatment was extreme and outrageous. FAC ¶ 106. The standard for IIED is stated in Section I(B), *supra*.

Here, for the reasons discussed above in Section II(B), the Court finds that Banks fails to plausibly plead a claim for IIED against Dart.

## D. Dismissal of State Law Claims Against Cook County Defendants (Count IV and V)[6]

The Cook County Defendants also argue for dismissal of the state law claims for intentional infliction of emotional distress and negligence under the Illinois Tort Immunity Act. Cook County Defs.' Memo. Dismiss at 8–9; 745 ILCS 10/1-101. The Cook County Defendants argue that (1) Banks failed to bring his state law claims

---

[6]Based upon the Court's findings dismissing Dart from this lawsuit, this analysis concerns the remaining Cook County Defendants, i.e., the Cook County Doctors and Cook County.

within one year as required by the Act, and (2) claims of negligence against governmental employees and entities are barred by the Act. Cook County Defs.' Memo. Dismiss at 9. The Court addresses each argument below.

### 1. Dismissal Based on Statute of Limitations

The Cook County Defendants contend that the Act requires Banks to have filed this lawsuit within the one-year limitations period, and that no equitable tolling period saves his time-barred claims. Cook County Defs.' Memo. Dismiss at 9–10. Here, argue, the Cook County Defendants, based on the timeline as-pled in the Amended Complaint, Banks alleged he experienced abdominal pain from May 16, 2020 to October 23, 2020, at which point he had an emergency appendectomy. *Id.* at 10. Based on this timeline, reason the Cook County Defendants, the statute of limitations on his state law claims for intentional infliction of emotional distress and negligence expired on October 23, 2021, and those claims should be dismissed with prejudice. *Id.*

In Response, Banks points to subsection 8-101(b) of the Act, which provides for a statute of limitation arising out of "patient care" that is two years, not one year. Pl.'s Resp. Cook County Defs.' Mot. Dismiss at 12–13. The section Banks contends applies to his claims states as follows. Further, argues Banks, his allegations against the Cook County Defendants "are arising out of patient care of Plaintiff, while Plaintiff was suffering from an objectively serious medical condition that presented a substantial risk of serious harm to Plaintiff when Plaintiff was a pretrial detainee" in the CCDOC. Pl.'s Resp. Cook County Defs.' Mot. Dismiss at 12. Banks argues that

the two-year statute of limitations would have run two years from October 23, 2020, which would be October 24, 2022, as October 23, 2022 was on a Sunday. *Id.* at 13 (citing 5 ILCS 70/1.11 and Fed. R. Civ. P. 6(a)(1)(C)). Thus, Banks posits that the Amended Complaint is timely under the correct provision within the Act. *Id.*

The Court begins with the relevant provisions of the Act. The Act provides that "no civil action may be commenced in any court against a local entity or any of its employees for injury unless it is commenced within one year from the date that the injury was received, or the cause of action accrued." 745 ILCS 10/8-101(a).

The next relevant provision of the Act states that:

> No action for damages for injury or death against any local public entity or public employee, whether based upon tort, or breach of contract, or otherwise, **arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known**, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of those dates occurs first, but in no event shall such an action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death.

745 ILCS 10/8-101(b) (emphasis added).

The Court agrees with Banks. The Cook County Defendants did not provide the complete quotation of subsection 8-101 of the Act, which expressly provides that "[n]o civil action *other than an action described in subsection (b) may be commenced . . .".* 745 ILCS 10/8-101(a). Subsection (b), as identified by Banks, provides that actions for damages arising out of patient care are subject to a two-year statute of limitations. 745 ILCS 10/8-101(b). Although the Court agrees that, generally, local governmental entities and their employees in Illinois benefit from a one-year statute of limitations

for certain civil actions filed against them, the statute of limitations is two years for claims subject to the exception in 745 ILCS 10/8-101(a)-(b), and for Section 1983 claims.[7] *See Williams v. Lampe*, 399 F.3d 867, 870 (7th City. 2005). Here, it is undisputed by the Cook County Defendants that the Cook County Doctors provided Banks with patient care. Notably, in their Reply, the Cook County Defendants do not attempt to refute that the two-year statute of limitations applies to the state law claims pled against the Cook County Doctors. *See* R. 86, Cook County Defs.' Reply at 9. Instead, in Reply, the Cook County Defendants focus on Banks' failure to link the allegations against Dart as to Banks with any provision of patient care, however the Court has already agreed to dismiss Dart from this action. Thus, the Court finds that based on the allegations in the Amended Complaint, it is clear the claims against the Cook County Doctors arise from patient care, and are subject to a two-year statute of limitations.[8] The Court also agrees with Banks that his Amended Complaint was timely filed (October 24, 2022), based upon the allegations in his Amended Complaint.

## 2. Dismissal Based on Tort Immunity Act

The Cook County Defendants also argue that the Act precludes any negligence claims against local governmental entities and their employees. The Cook County Defendants highlight the following subsection of the Act:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the

---

[7]The Cook County Defendants seemingly acknowledge the two-year statute of limitations for Section 1983 claims by not moving to dismiss those claims based on any statute of limitations grounds.

[8]The claims against Cook County are based on a theory of *respondeat superior* as to the Cook County Doctors.

> employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.

745 ILCS 10/4-105; Cook County Defs.' Memo. Dismiss at 7–8, 11. The Cook County Defendants contend that the standard of "willful and wanton conduct" demands "a course of action which shows an actual or deliberate intention to cause harm, or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* (quoting *Sparks v. Starks*, 856 N.E.2d 575, 578 (Ill. App. 1st Dist. 2006)). Here, argue the Cook County Defendants, Banks "failed to plead that any conduct of Medical Defendants rises to the level of willful and wanton" and Count VI of the Amended Complaint should be dismissed with prejudice.

Banks disagrees, arguing that other sections of the Act allow for negligence claims. Banks highlights the following subsection of the Act:

> (c) Nothing in this section exonerates a public employee who has undertaken to prescribe for mental or physical illness or addiction from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury.

> (d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental or physical illness or addiction or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury.

745 ILCS 10/6-106(c)-(d). Banks contends that these provisions allow for his negligence claims against the Cook County Defendants for his medical treatment.

Although suggested by the Cook County Defendants, they do not provide cases which stand for the proposition that a negligence claim cannot be stated against a

23

local governmental entity or its employees as a matter of law. Instead, the Cook County Defendants focus their argument that the allegations, as-pled, are insufficient to allege that the Cook County Defendants (1) knew that medical care was needed, and (2) that the failure to take reasonable action to provide the medical care was "willful and wanton," as required to overcome the immunity provided to the Cook County Defendants through Section 4-105 of the Act. Cook County Defs.' Reply at 7. This is consistent with Illinois cases where there is no "independent tort of willful and wanton conduct; rather, willful and wanton conduct is regarded as an aggravated form of negligence." *In re Est. of Stewart*, 60 N.E.3d 896, 909 (Ill. App. 2016) (citing *Doe–3 v. McLean County Unit District No. 5 Board of Directors*, 973 N.E.2d 880 (Ill. 2012)). Accordingly, while the remaining Cook County Defendants may be immune for negligent actions, they are not immune against willful and wanton actions. *See id.*

At this stage, accepting as true all well-pled allegations as true and drawing all reasonable inferences in favor of Banks, the Court finds Banks has included sufficient allegations that support that the conduct of the remaining Cook County Defendants was "willful and wanton" such that Act immunity may be overcome. For example, in his Amended Complaint, Banks alleges he was diagnosed with a "6 mm appendicolith" from a CT scan, and was indicated for surgery, and that subsequently treating physicians would have access to this information in his medical records, yet no action was taken. *See* FAC ¶¶ 54–58. Whether defendants acted willfully and wantonly is typically a question of fact for the jury. *See Smith v. City of Chicago*, 143

24

F. Supp. 3d 741, 760 (N.D. Ill. 2015) (collecting cases). Whether the evidentiary record will support Banks' claim is an issue for another day. *See Lipsey v. U.S.*, 879 F.3d 249, 257 (7th Cir. 2018) (affirming resolution in favor of defendants having immunity under Sections 4-105 and 6-105 and 6-106 of the Act on summary judgment).

On that basis, the Court denies the remaining Cook County Defendants' motion to dismiss the negligence claim.

## III. Wexford Medical Staff's Motions

### A. Monell Liability as to Wexford (Count III)

In Count III, Banks brings a *Monell* claim against Wexford. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978) (an action against a defendant in his "official capacity" is, in essence, an action against the governmental entity of which the official is an agent). "Private contractors that provide medical services to prisoners are treated like municipalities for purposes of § 1983 claims." *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). "Applying this principle, the Seventh Circuit has consistently held that Wexford, which contracts with the Illinois Department of Corrections to provide medical care to inmates at IDOC facilities, can be sued under 42 U.S.C. § 1983." *Willis v. Williams*, 2022 WL 4599260, at *44 (N.D. Ill. Sept. 30, 2022). A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. There are three different ways in which a municipality might violate Section 1983: "(1) through an express policy that, when enforced, causes a constitutional

25

deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final policy-making authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Mere "legal conclusions or elements of the cause of action" must be disregarded and "boilerplate" allegations that repeat the elements of *Monell* claims without any further factual content should be dismissed for failure to state a claim. *Martinez v. Sgt. Hain*, 2016 WL 7212501, at *3 (N.D. Ill. Dec. 13, 2016).

Based on the Amended Complaint, Banks appears to be attempting to plead each of the three *Monell* theories, and the Court addresses each one in turn, below.

### 1. Express Policy

Wexford first moves to dismiss Count III to the extent it attempts to state a *Monell* express policy claim, arguing that Banks has only made vague and conclusory allegations—that "the misconduct described [in the pleading] was undertaken pursuant to a policy, practice, or custom of [Wexford] . . . in that; [a]s a matter of widespread practice so prevalent, entrenched, and well known as to comprise policy or custom"—that are insufficient to state an unconstitutional policy. R. 94, Wexford Defts.' Memo. Dismiss at 4.

Banks, in Response, points to various allegations within the FAC to support his claim (*see* Pl.'s Resp. Wexford at 3–8). However, the Court does not discern any

response from Banks to the specific argument that no express policy of Wexford is pled in his Amended Complaint. *See generally* Pl.'s Resp. Wexford. Thus, Banks has waived any argument that he pled an express policy under *Monell*. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Waiver aside, the Court finds no allegations in the Amended Complaint to support *Monell* liability under an express policy.

The Court agrees with Wexford that the Amended Complaint does not include sufficient allegations to support an express policy claim under *Monell*.

## 2.    Widespread Practice, Custom, or Policy

Wexford next moves to dismiss Count III to the extent it attempts to state a *Monell* widespread practice, custom, or policy claim. Wexford argues that the four practices or customs alleged by Banks—"(1) failure to provide adequate medical and dental care to prisoners in the NRC/Stateville CC; (2) failure to sufficiently train doctors, dentists, nurses, and other staff members to properly diagnose and/or treat prisoners seeking medical and dental care to prisoners in the NRC/Stateville CC; (3) failure to provide adequate means of tracking and responding to requests for medical attention of prisoners in the NRC/Stateville CC; and, (4) failure to provide adequate staffing and resources to tend and/or treat prisoners seeking medical and dental care in the NRC/Stateville CC"—are conclusory, without supporting factual allegations. Wexford Defts.' Memo. Dismiss at 5–7. Wexford further argues that Banks failure to include allegations regarding other inmates defeats his claim. *Id.* at 8. Moreover, Wexford contends that Banks fails to allege that the policy, practice, or custom was

27

the "moving" force causing the alleged constitutional deprivation, as required. *Id.* at 9.

In Response, Banks identifies Paragraph 98 of his Amended Complaint as making specific allegations "of the widespread, prevalent, and entrenched policies and practices of Wexford," specifically by failing to treat his medical condition, failing to refer him for and/or promptly facilitate his surgical treatment, failing to provide sufficient training to diagnose and treat prisoners, failing to provide adequate means of tracking and responding to requests for medical attention from prisoners, and failing to provide adequate staffing to treat prisoners. Pl.'s Resp. Wexford at 6–8. In support of these contentions, Banks highlights his medical history and treatment allegations in Paragraphs 63 through 69, and that his appendix was ultimately removed in an emergency surgery on October 23, 2020, citing Paragraphs 71–72 of the Amended Complaint. *Id.* at 5–6. Banks focuses on the failure to sufficiently train Wexford employees as the policy or custom. *Id.* at 8, 10. Banks also responds to Wexford's contention that he must allege facts regarding other inmates as incorrect under *Grieveson v. Anderson*, 538 F. 3d 763 (7th Cir. 2008), citing the following section of that opinion: "Turning to [plaintiff's] personal experiences, we note that it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience." *Id.* at 774.

Lastly, Banks responds to Wexford's "moving" force argument by highlighting his allegation of insufficient training, which makes the causal connection to the conduct of Wexford employees "failing to meaningfully, properly, and promptly treat

28

the chronic severe abdominal pain and bodily discomfort" Banks was experiencing. *Id.* at 10–11.

Viewing the allegations of the Amended Complaint in the light most favorable to Banks, the Court finds that Banks plausibly alleges *Monell* liability based upon a widespread practice against Wexford. *See* FAC ¶¶ 63–69; 71–72; 98. Although Banks includes several bases for his widespread practices claim, in briefing he focuses on the failure to train Wexford Medical Staff. Pl.'s Resp. Wexford at 8–9 ("Plaintiff contends that these factual allegations of Plaintiff's experience demonstrate the existence of the official policy or custom of insufficient training by Wexford alleged in Subparagraph 98 [of his complaint], and not random events.")

A "widespread practice" "is so well-settled as to amount to a policy[.]" *Grieveson*, 538 F.3d at 773. To evaluate the sufficiency of Banks' widespread practice claim, the Court finds *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578 (N.D. Ill. Oct. 31, 2016), a case cited by both parties, instructive. In *Arita*, the plaintiff alleged that Wexford's medical staff ignored his complaints of swelling and pain in his groin area for nine months before examining him. *Id.* at *1. When plaintiff was finally examined, tests revealed he was suffering from an inguinal hernia, which required surgery. *Id.* For his *Monell* claim, plaintiff alleged that "Wexford, upon information and belief, has a policy of ignoring [plaintiff's] requests/complaints, [and] other inmates' medical needs as well." *Id.* at *3. The plaintiff also asserted a single conclusory allegation that Wexford had a policy of treating other inmates in the same fashion. *Id.* The court held that these allegations were insufficient to survive a motion

to dismiss. *Id.* The court found plaintiff's allegation that Wexford had a policy of ignoring complaints, made only "upon information and belief" was unsupported by any facts regarding the experiences of other inmates. *Id.* at *3. The Court applied this reasoning to its decision in *DiMaio v. Wexford Health Sources, Inc.*, 2021 WL 1056848, at *3 (N.D. Ill. Mar. 19, 2021) (dismissing widespread practice claim where conclusory allegations were insufficient to state a claim).

*Arita* and *DiMaio,* however, are distinguishable from this case. Unlike the deficient allegations in *Arita*, Banks' allegations with respect to his *Monell* claim are not stated "on information and belief." Further, unlike the plaintiff in *Arita* whose allegations included delay in testing by medical staff for nine months, at which point testing revealed a surgery was necessary, Banks' Amended Complaint includes allegations that Wexford Medical Staff "knew of the '6 mm appendicolith within the distal appendix'" because of a medical record from a visit with Wexford Medical Staff, and they did nothing about it. FAC ¶¶ 64–65. From this allegation, the Court can plausibly infer that Wexford Medical Staff knew of his medical condition which required surgical intervention (the 6 mm appendicolith), and did not treat it, supporting an inference of insufficient training. *See id.* And unlike the deficient allegations in *DiMaio*, here Banks has gone beyond including conclusory allegations, and has provided specific allegations to support his claim.

As acknowledged by the Court in *DiMaio*, "there is no clear consensus as to how frequently such conduct much occur to impose *Monell* liability." 2021 WL 1056848, at *3. However, here, over a nearly 10-week period while in custody at

Stateville, Banks includes specific factual allegations relating to his repeated visits and interactions with Wexford Medical Staff, including his reporting of serious, and unabated, abdominal pain over multiple visits. FAC ¶¶ 64, 65, 89. Banks also alleges that the Wexford Medical Staff knew of the "6 mm appendicolith within the distal appendix" because Banks' medical record from a visit on September 11, 2020 with APN Nanthikattu reflected that same information. *Id.* ¶¶ 54, 64–65. These allegations support a plausible inference that the Wexford Medical Staff were insufficiently trained on how to diagnose and treat Banks, and that this widespread practice was the "moving force" causing Banks' injury, e.g. the chronic severe abdominal pain and bodily suffering and emergency appendectomy surgery. *Id.* ¶¶ 71–72.

Although Banks' allegations do not speak directly to the experiences of inmates other than himself, the Court recognizes that, under *Grieveson*, the Seventh Circuit accounted for the possibility that a plaintiff may state a claim for widespread practices based upon an inmate's individual experiences. 538 F.3d at 774[9]; *see also Willis*, 2022 WL 4599260, at *14 (cleaned up) ("there is no rule requiring an inmate to corroborate his own experience with those of other inmates.") The Court finds this is such a case. Here, the allegations in Banks' Amended Complaint include that he had consecutive medical visits with Wexford Medical Staff over an approximate 10-week period, during which he complains that the Wexford Medical Staff inadequately

---

[9]The Court notes that in *Grieveson* the Seventh Circuit was not considering the federal pleading standard or a motion to dismiss, but was considering a ruling by the district court on summary judgment.

treated his severe abdominal pain, despite a record and/or having knowledge of the 6 mm appendicolith from his medical records, and which led to an emergency appendectomy. At this juncture, the Court can draw a plausible inference of the existence of a widespread policy of failing to adequately train Wexford Medical Staff to diagnose and treat inmates from Banks' allegations. Whether Banks can adduce evidence to support his widespread practice allegations is a question for another day.

On that basis, the Court finds that Banks has included sufficient allegations to state a claim for a widespread practice by Wexford under *Monell*.

### 3. Policymaker Claim

Last, Wexford moves to dismiss Count III to the extent it attempts to plead a *Monell* claim based on a Wexford employee with "final policy-making authority," arguing that Banks has failed to allege any of the Wexford employees had final policy-making authority, as required to state a claim under this *Monell* theory of liability. Wexford Defts.' Memo. Dismiss at 10.

The Court does not discern any response from Banks to the specific argument that Banks fails to plead that any Wexford employee had final policy-making authority in his Amended Complaint. *See generally* Pl.'s Resp. Wexford. Thus, Banks has waived any argument that he pled an express policy under *Monell. See Bonte*, 624 F.3d at 466 (7th Cir. 2010). Waiver aside, the Court finds no allegations in the Amended Complaint to support *Monell* liability based upon a Wexford employee with final policy-making authority.

In conclusion, the Court finds that Banks' Amended Complaint has included sufficient allegations to state a claim for a widespread practice by Wexford under *Monell*.

### B.   Intentional Infliction of Emotional District as to Wexford Medical Staff (Count V)

In Count V, Banks asserts an IIED claim against the Wexford Medical Staff and Wexford.[10] Banks alleges that the Wexford Medical Staff's conduct in deliberately delaying medical treatment to Banks, including surgical treatment, was extreme and outrageous. FAC ¶ 112. Banks further alleges that pursuant to *respondeat superior*, Wexford is also liable for the conduct of the Wexford Medical Staff. *Id.* at 115. The standard for IIED is stated in Section I(A), supra.

The Wexford Medical Staff and Wexford argue that Banks' claim fails because it only includes conclusory allegations with no supporting factual allegations. Wexford Defts.' Memo. Dismiss at 12; R. 103, Nanthikattu's Memo. Dismiss at 3–4.

Banks counters that his Amended Complaint includes allegations supporting an IIED claim, namely that the Wexford Defendants' "deliberately delayed medical treatment of Plaintiff and deliberately delayed in allowing and providing Plaintiff access to necessary medical care, including surgical treatment of Plaintiff's appendix." FAC ¶ 111. Banks also highlights Paragraphs 112–114 regarding the allegations of emotional distress. *Id.* ¶ 112–114. Banks also points to *Smith v. Gomez*, 2019 WL 2288015 (N.D. Ill. May 29, 2019) (collecting cases), where a district court

---

[10]This claim also names Defendants Jeffreys and Gomez, however the claim against Jeffreys and Gomez has been dismissed. *See supra*, Section I(B).

recognized that while "finding extreme and outrageous conduct is a demanding standard, district courts in the Seventh Circuit have found that allegations supporting a deliberate indifference claim are sufficient to also support an Illinois state law claim for IIED."

The Court agrees with Banks. The allegations in the Amended Complaint sufficiently allege an IIED claim. Specifically, Banks alleges that the Wexford Medical Staff "knew or should have known that their conduct in deliberately delayed medical treatment of Plaintiff and deliberately delaying in allowing and providing Plaintiff access to necessary medical care, including surgical treatment of Plaintiff's appendix, had a high probability of causing severe emotional distress to Plaintiff." FAC ¶ 113; *see Smith*, 2019 WL 2288015, at *5 (finding allegation that defendant "either intended to cause him severe emotional distress, or knew there was a high probability such emotional distress would result from his deliberate indifference" sufficient to state a claim for IIED). Tellingly, the Wexford Medical Staff have not moved to dismiss the deliberate indifference claim pled against them, and similar allegations support the sufficiency of his pleading an IIED claim against the Wexford Defendants.

## Conclusion

For the aforementioned reasons, Jeffreys and Gomez's motion to dismiss [64] is granted with prejudice. The Cook County Defendants' motion to dismiss [66] is granted with respect to Dart with prejudice, and denied as to all remaining Cook

County Defendants. The Wexford Defendants' motions to dismiss [93][102] are denied. Defendants Dart, Jeffreys and Gomez are terminated from this case.

The Court orders Banks to file an Amended Complaint consistent with this Opinion by October 20, 2023.

Dated: September 29, 2023

United States District Judge
Franklin U. Valderrama